IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAROLYN MILLENDER, | * | |
| Plaintiff, | * | |
| -vs- | * | CIVIL ACTION NO. 2:07-cv-145-MHT |
| H. COUNCILL TRENHOLM STATE TECHNICAL COLLEGE, and | * | |
| ANTHONY MOLINA, in his official capacity as President of H. Councill | * | |
| Trenholm State College, | * | |
| Defendants. | * | |

**REPLY BRIEF OF ALABAMA EDUCATION ASSOCIATION
IN SUPPORT OF MOTION TO QUASH SUBPOENA**

The Alabama Education Association (AEA) respectfully submits this reply brief in support of its motion to quash. Without waiving further points that might be made at the hearing on the motion, the AEA states as follows:

1. Defendant's opposition to the motion appears to be premised in part on the assumption that the AEA has withheld documents responsive to the subpoena, beyond those listed in the privilege log. This assumption is incorrect, and defendant has offered no evidence in support of the assumption.

2. Based on the discussions between counsel for AEA, and counsel for the parties, it appears that there remains a live dispute only as to one document as to which the AEA

1

has asserted a privilege. (Most others listed in the privilege log are, to our understanding, undisputedly privileged; as to two documents in the privilege log, the motion to quash is moot).

       3. The document in dispute is the "P R & R form," which is a form by which an AEA member seeks legal representation, paid and provided by AEA, for an employment-related dispute. The P R & R includes blanks for the member to fill in facts, contentions and claims for which the member seeks legal assistance; and it also includes some pre-printed matter explaining the nature of the AEA's program of providing legal assistance to its members. The nature and purpose of the P R & R form, along with the manner in which the AEA uses such forms, has been further explained in the affidavit that is before the Court, as part of the motion to quash.

       4. While the Defendant claims that the P R & R form is not a privileged communication, the Defendant is incorrect. First of all, the fact that the form contains the member's description of relevant *facts* is not (as Defendant would have it, *see* Defendant's response, ¶ 6) a reason to *remove* it from the scope of the privilege. The attorney-client privilege (like the work product doctrine as well) undoubtedly covers communications of facts, so long as the communication otherwise falls within the scope of the protection. Just to take one obvious hypothetical: "Lawyer, I did kill him but only because I thought that he was threatening me with a shotgun" is a pure statement of fact, but it is the very heart of what the attorney-client privilege is meant to protect. To ask whether "the facts" are privileged, as Defendant seems to ask, is not the real question; the

question is whether *the communication* is privileged, and the answer to that question does not depend on whether the communication involved statements of fact or some other sorts of statements.

5. Defendant also claims that the P R & R form is not privileged because it was a communication to the AEA, rather than a communication directly to an AEA-provided lawyer. However, the privilege still applies, as pointed out in the motion to quash. The best analogy, here, is to the insurance scenario – as Defendant itself recognizes, by invoking that same analogy (Defendant's response, ¶ 6). Like a liability insurer, the AEA in this instance is in the position of providing legal representation after reviewing the submission (here, the P R & R form). As the Alabama Supreme Court has recognized, in the insurance scenario the appointed lawyer represents both the insured and the insurer. *See*, *e.g.*, *Mitchum v. Hudgens*, 533 So.2d 194, 198 (Ala. 1988) ("When an insurance company retains an attorney to defend an action against an insured, the attorney represents the insured as well as the insurance company in furthering the interests of each.") This is recognized also in the Alabama Rules of Professional Conduct. *See* Rule 1.8 and official commentary thereto ("In the normal insurance defense relationship …. appointed counsel has two clients, the insured and the insurer. Hence, the insurer is not a third party."). The same is true in this instance.

6. Most importantly as to the P R & R form, federal case law has recognized that an insured's communications to an insurer do come within the scope of the attorney-client privilege, *if* (as is undisputedly true here) the purpose of the communication is expressly

to seek legal representation based on the matters communicated. *See Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corporation*, 5 F.3d 1508, 1515 (D.C. Cir. 1993) ("Certainly, where the insured communicates with the insurer for the express purpose of seeking legal advice with respect to a concrete claim, or for the purpose of aiding an insurer-provided attorney in preparing a specific legal case, the law would exalt form over substance if it were to deny application of the attorney-client privilege.") In this instance, a communication to the AEA is privileged because it is a confidential communication made for the purpose of securing legal representation. *See In re Grand Jury Proceedings 88-9*, 899 F.2d 1039, 1042 (11th Cir. 1990) (the privilege covers communications for the purpose of "securing …legal services or … assistance in some legal proceeding").

  7. Furthermore, in the specific context of legal claims of AEA members, the Alabama State Bar has already recognized that members have a type of ongoing attorney-client relationship with AEA's in-house counsel by virtue of their membership. This has been recognized, for instance, in the attached advice letter from the State Bar's General Counsels' Office to one such in-house counsel: "You have an ongoing attorney-client relationship with all AEA members by virtue of their membership in the association you represent …" Therefore, the existence of the privilege is even more clear in this instance, than it would be in an analogous insurance setting. As set forth in the affidavit that has already been filed, P R & R forms are reviewed by the AEA's in-house counsel in order to help to determine whether legal representation will be provided. Such a form, then, is

not actually even a communication to a non-lawyer seeking the provision of legal services; it is, directly, a communication to a lawyer who has an ongoing attorney-client relationship with the member, as stated by the Bar's Office of General Counsel.

    Respectfully submitted,

    THE GARDNER FIRM, P. C.
    Attorneys for Movant, Alabama Education Association
    P. O. Box 3103
    Mobile, Alabama  36652
    251-433-8100
    FAX 251-433-8181

    By:    s/J. CECIL GARDNER
           J. CECIL GARDNER

## CERTIFICATE OF SERVICE

    I hereby certify that on this 16th day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Mary A. Goldthwaite
    Office of Attorney General
    11 South Union Street
    Montgomery, AL 36130

    Respectfully submitted,

    s/J. Cecil Gardner
    Federal Bar Number:  463461
    Attorney for Movant, Alabama Education Association
    P. O. Box 3103
    Mobile, AL 36652
    Phone:  251-433-8100
    Fax: 251-433-8181
    E-Mail: cgardner@thegardnerfirm.com



## ALABAMA STATE BAR
OFFICE OF GENERAL COUNSEL
415 Dexter Avenue • Post Office Box 671 • Montgomery, Alabama 36101
Telephone: 334 / 269-1515 • Fax: 334 / 261-6311

July 29, 2002

Mr. Clinton M. Daughtrey
Alabama Education Association
P.O. Box 4177
Montgomery, AL 36103-4177

Re: Written Ethical Inquiry

Dear Mr. Daughtrey:

I am writing in response to your letter of July 26, 2002, requesting an ethics opinion from this office. A copy of your letter is attached hereto for reference purposes. In response to your request, I am providing you the following which is an informal opinion of the Office of General Counsel and is not binding on the Disciplinary Commission of the Alabama State Bar.

According to your letter, you are in-house counsel to the Alabama Education Association. A private attorney has begun media solicitation of non-teacher members of the association offering to represent them in litigation against their employing school boards for unpaid overtime under the Fair Labor Standards Act. You propose to send a letter to these members reminding them that they are entitled to legal services without cost as a benefit of their membership in the association. Your inquiry concerns the ethical propriety of contacting members who may already be represented by a private attorney.

Initially, please be advised that written communication with members of an organization you represent does not constitute solicitation and, therefore, need not comply with the Rules of Professional Conduct which govern attorney advertising. You have an ongoing attorney-client relationship with all AEA members by virtue of their membership in the association you represent and, therefore, there are no ethical restrictions or limitations on either the subject matter or the method of your communication with them. The answers to your specific questions are as follows:



Mr. Clinton M. Daughtrey
Page Two
July 29, 2002

1. You may provide your members, upon request, with a "second opinion" on the subject matter of the litigation, even if they are already represented.

2. You have no ethical obligation to notify the attorney representing the members of your communication with them.

3. If a member asks your opinion as to the reasonableness of the fee structure to which they have already agreed, or any other provision of the contact/retainer agreement they have already executed, you may provide them with your opinion even if that opinion is that they should terminate the representation and request assistance without cost through the association.

4. You may represent the member in severing the contract they have with the attorney.

5. If a member terminates the services of the attorney, the attorney is entitled to be paid a reasonable hourly rate for the time actually expended in representing the member and for a proportionate share of the time expended collectively on behalf of more than one member. The member would not be responsible for the attorney's overhead expenses such as secretarial or advertising costs.

I trust the above is sufficient to answer your inquiry. If you have further questions, please feel free to contact this office.

Sincerely,

*L. Gilbert Kendrick*

L. Gilbert Kendrick
Assistant General Counsel

enclosure

LGK/vf